**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

---

SAHAR ABDULLAH and
MATTHEW W. WILLOX, on behalf of themselves
and others similarly situated,
                    Plaintiffs,

                                                    Case No. 19-10220

v.                                                  HON: Arthur J. Tarnow

CITY OF DEARBORN,
                    Defendant.

---

THE LAW OFFICES OF AARON D. COX, PLLC
Aaron D. Cox (P69346)
Co-Counsel for Plaintiffs
23380 Goddard Rd.
Taylor, MI 48180
734-287-3664
Aaron@aaroncoxlaw.com

MARK K. WASVARY, P.C.
Mark K. Wasvary (P51575)
Co-Counsel for Plaintiffs
2401 W. Big Beaver Rd., Suite 100
Troy, MI 48084
248-649-5667
mark@wasvarylaw.com

William M. DeBiasi (P35892)
Debra A. Walling (P37067)
Attorneys for Defendant
16901 Michigan Ave., Suite 14
Dearborn, MI 48126
313-943-2035
wdebiasi@ci.dearborn.mi.us
dwalling@ci.dearborn.mi.us

---

1

## FIRST AMENDED CLASS-ACTION COMPLAINT

NOW COMES, SAHAR ABDULLAH, ("Abdullah") and MATTHEW W. WILLOX ("Willox") on behalf of themselves and all others similarly situated, by and through the undersigned attorneys from THE LAW OFFICES OF AARON D. COX, PLLC and MARK K. WASVARY, P.C., and pursuant to FRCP 15 (a) (1) (B) states for this First Amended Class-Action Complaint as follows:

### I.   NATURE OF THE ACTION

1.      This action is brought on behalf of a class of all persons who own, or at one time owned, real property in the City of Dearborn, Michigan (the "City").

2.      The State of Michigan under the Home Rule City Act (MCL 117.1 et seq.) permits municipal corporations like the City to adopt certain laws, codes, or rules for building maintenance issues.

3.      MCL 117.3 (K) specifically addresses the adoption of certain building codes:

> Except as otherwise provided under the Stille-DeRossett-Hale single state construction code act, 1972 PA 230, MCL 125.1501 to 125.1531, a city may adopt a law, code, or rule that has been promulgated and adopted by an authorized agency of this state pertaining to fire, fire hazards, fire prevention, or fire waste, and a fire prevention code, plumbing code, heating code, electrical code, building code, refrigeration machinery code, piping code, boiler code, boiler operation code, elevator machinery code, an international property maintenance code, or a code pertaining to flammable liquids and gases or hazardous chemicals, that has been promulgated or adopted by this state, by a department, board, or other agency of this state, or by an organization or association that is organized and conducted for the purpose of developing the code,

2

by reference to the law, code, or rule in an adopting ordinance and without publishing the law, code, or rule in full. The law, code, or rule shall be clearly identified in the ordinance and its purpose shall be published with the adopting ordinance. Printed copies of the law, code, or rule shall be kept in the office of the city clerk, available for inspection by, and distribution to, the public at all times. The publication shall contain a notice stating that a complete copy of the law, code, or rule is made available to the public at the office of the city clerk in compliance with state law requiring that records of public bodies be made available to the general public.

4.    The City has adopted a number of codes pursuant to the Home Rule City Act and MCL 117.3 (K).

5.    Chapter 5, Article XIV, §5-1381 of the City's codes adopts the International Property Maintenance Code (IPMC).

6.    The IPMC is the City's guideline for issuing a certificate of compliance/occupancy for existing residential real property in the City.

7.    Sec. 104.4 of the IPMC expressly authorizes the City's code official to enter any premises without a warrant upon reasonable cause to perform an inspection of the property.

8.    The City has also adopted certain additional ordinances relating to the inspection of real property for compliance with minimum housing standards. These ordinances apply to both owner-occupied and non-owner occupied real property alike.

9.    As it pertains to owner-occupied real property the City adopted Chapter 11, Article II, §11-41, which not just authorizes warrantless searches but

compels the owners of real property to grant such warrantless searches. The text of the ordinance is as follows:

Sec. 11-41. - Right of entry, access.

**(a)** The residential services department director or his/her designee is hereby authorized and directed to make inspections to determine the conditions of dwellings, dwelling units, rooming units and premises, located within the city, in order that they may perform their duty of safeguarding the health and safety of the occupants of dwellings and of the general public. **For the purpose of making such inspections, the residential services department director or his/her designee, is hereby authorized to enter, examine and survey at any reasonable time all dwellings, dwelling units, rooming units and premises. The owner or occupant of every dwelling, dwelling unit, rooming unit, or the person in charge thereof, shall give free access to such dwelling, dwelling unit or rooming unit and its premises, at any reasonable time, for the purpose of such inspection, examination and survey.**

(emphasis added)

10.     As it pertains to non-owner occupied real property the City adopted Chapter 11, Article II, §11-198, which, like its owner-occupied companion, expressly compels the owners of real property to grant warrantless searches. The text of the ordinance is as follows:

Sec. 11-198. - Inspections.

(a) The director of building and safety, or such other building officials as the director may designate, is hereby authorized to make, and shall make, inspections of non-owner occupied properties, the non-owner occupied portions of two-family dwellings including common areas or any other dwelling...

(b) **An owner, agent, representative or tenant shall consent to such**

**inspections to determine the condition of a vacant dwelling or any other dwelling in the city.** For the purpose of making such inspections, the building inspector, or his authorized representative, is hereby authorized, upon seven days' notice, to enter and inspect at all reasonable times. **The owner, agent, representative or tenant shall give the building inspector, and his authorized representative, free access to the premises.** The owner or his/her authorized representative shall be present for each such inspection.

(emphasis added)

11.     Collectively City codes' §11-41 and §11-198 shall be hereafter referred to as the "Inspection Ordinances."

## A. <u>Pre-Sale Inspections</u>

12.     Plaintiffs incorporate the preceding paragraphs

13.     The City has also adopted certain additional ordinances regarding the sale of dwellings within the City (the "pre-sale inspection"). The City's code makes it a criminal act[1], punishable by up to 90 days in jail, for any person to sell or assist in the sale of a property without first permitting a warrantless search[2].

14.     Chapter 11, Article II, §11-42 specifically provides:

Sec. 11-42. - Inspection and occupancy requirements.

(a) It shall be unlawful for anyone, including, but not limited to, the owner, attorney, representative, lending institution, title company, real-estate firm, broker, or salesman to assist in consummating a sale or transfer, including installment sales

---

[1] See §11-43 of the City's code.

[2] The City's code requires a certificate of occupancy be obtained prior to consummating a sale; the seller is mandated under the Inspection Ordinances to permit the warrantless search in order to obtain a certificate of occupancy.

such as land contracts or other transaction involving real property in the city regardless of where the closing of the sale occurs, without first presenting the prospective purchaser or grantee with a certificate of occupancy issued by the residential services department.

15.   Property owners pay $200.00 for the inspection, which includes one follow up inspection. Additional inspections will cost the property owner additional fees.

16.   The Inspection Ordinances expressly mandates that the owner allow the City's Code Official to enter any premises without a warrant for purpose of the pre-sale inspection.

17.   The City's code specifically mandates warrantless searches and threatens homeowners with criminal charges and fines for failing to permit the City's inspection for any reason.

18.   The City threatens and/or issues misdemeanor tickets for failure to obtain the Certificate of Compliance by way of the required pre-sale inspection. Upon information and belief, third-party realtors and title companies are likewise threatened with criminal charges if the owner doesn't permit the warrantless search and frequently hold up sales of real property for this reason.

19.   The mandated pre-sale inspections preclude property owners from lawfully selling their home without first being subjected to a warrantless search.

20.   The Pre-Sale Inspection Ordinances mandate the City officials

6

perform these inspections and specifically authorize City officials to enter homes without a warrant, with no pre-compliance review procedures, and no procedural guidelines for obtaining an administrative search warrant.

21.     The Pre-Sale Inspection Ordinances ultimately result in it being a punishable criminal offensive to refuse the City's inspections.

22.     Inspections under these codes and ordinances are performed by individuals trained in these codes and their enforcement (the "Code Official"). The Code Official knows, or should know, the requirements of the Inspection Ordinances and other applicable laws.

23.     An owner of real property who fails to permit the City to inspect their properties is denied a Certificate of Compliance and cannot lawfully sell, rent or occupy their property in the City.

## B. <u>Rental Dwelling Registration and Inspections</u>

24.     Plaintiffs incorporate the preceding paragraphs.

25.     The City's Inspection Ordinances likewise apply to non-owner occupied rental property. Such application is derived from the City's adoption of §11-191 et seq. of their code, which requires the registration, inspection, and obtainment of a certificate of occupancy for all rental property (the "Rental Ordinance").

26.     The City's Rental Ordinance requires that all owners of rental

dwellings shall register each rental dwelling and all rental units.

27.     The registration process requires a Certificate of Occupancy from the City's Building Department and nobody may lease, rent, or cause to be occupied a rental dwelling without a valid Certificate of Occupancy.

28.     The Rental Ordinance specifically requires an inspection by the Building Department prior to issuance of a Certificate of Occupancy.

29.     Failure to obtain a Certificate of Occupancy results in civil infraction tickets and fines of $100.00 for each day a Certificate of Occupancy is obtained. The Rental Ordinance then mandates that subsequent offenses be charged as a misdemeanor criminal violation, subjecting the alleged offender to potential jail time. See §5-1382 (4).

30.     Much like the Pre-Sale Inspection Ordinance, the Rental Inspection Ordinance has no pre-compliance review procedures, and no procedural guidelines for obtaining an administrative search warrant.

31.     Quite to the contrary, the Rental Inspection Ordinance expressly mandates that the owner of the property permit unlimited warrantless searches.

32.     If a rental inspection is refused for any reason, it ultimately results in punishment which can include being charged with a crime and imprisonment.

33.     An owner of real property who fails to permit the rental inspection is denied a Certificate of Occupancy and cannot lawfully rent or allow occupancy of

the property, thereby depriving them of their right to earn income.

34.    Defendant has impeded and threatens to further unconstitutionally impede Plaintiffs in their right to be free from unlimited warrantless searches without probable cause by maintaining, implementing and enforcing vague policies that (i) threaten Plaintiffs and others with subjection to unduly broad warrantless searches of their houses without probable cause; (ii) violates Plaintiffs' reasonable expectation of privacy; and (iii) retaliate against Plaintiffs for exercising their Fourth Amendment rights by either (a) pressing criminal charges against them, or (b) depriving them of their property rights, including but not limited to the right to sell or rent their houses to others.

## II.    WHAT HAPPENED TO PLAINTIFFS HAPPENS TO EVERY OTHER OWNER OF REAL PROPERTY IN THE CITY

35.    Plaintiffs incorporate the preceding paragraphs.

36.    The plight of Plaintiffs illustrates the dangers of the system set forth by the City.

37.    Sahar Abdullah was the owner of a residential home located at 5261 Mead, City of Dearborn, Michigan.

38.    Abdullah had the exclusive right to use and control the property. In 2016, Ms. Abdullah determined to sell her home on Mead and was forced to pay the City in excess of $200.00 under the City's Unconstitutional Inspection

Ordinances permitting warrantless searches.

39.    The sale of Abdullah's property was likewise delayed until January 27, 2016 because the title company refused to close the sale of the property until such time as the City issued a certificate of occupancy under its Unconstitutional Inspection Ordinances.

40.    In the event that Abdullah had refused to pay the inspection fee she would have been denied the right to sell her property and subject to a misdemeanor ticket.

41.    Under these threats, neither Abdullah nor any land owner can be deemed to have consented to a search by the City.

42.    Abdullah did in fact pay the City inspection fees. A City certificate of occupancy for the property was issued on January 26, 2016 and the sale was consummated on January 27, 2016.

43.    Plaintiff Willox is the owner of 23280 Beech Street in the City of Dearborn.

44.    Willox is subject to the City's Rental Inspections. The City's standard notices requiring an inspection provide that failure to comply with the Inspection Ordinances results in tickets being issued with "penalties and fines imposed."

45.    It is the policy and custom of the City, pursuant to its Inspection Ordinances, to perform mandatory, warrantless searches of all residential real

10

property within the City in violation of the Fourth Amendment of the United States Constitution.

46.     Willox, like Abdallah, paid the City inspection fees under the City's unconstitutional inspection ordinances.

### III. PARTIES

47.     Plaintiffs incorporate the preceding paragraphs.

48.     Plaintiff Abdullah is an adult individual who resides in Wayne County, Michigan.

49.     Plaintiff Willox is an adult individual who resides in Wayne County, Michigan.

50.     Defendant City of Dearborn is a municipal corporation located within Wayne County in the State of Michigan.

### IV.     JURISDICTION AND VENUE

51.     Plaintiffs incorporate the preceding paragraphs.

52.     Jurisdiction by this Court over Plaintiffs' constitutional claims is proper pursuant to 28 USC § 1343 and 28 USC § 1331.

53.     To the extent necessary, supplemental jurisdiction over any state law claims is proper pursuant to 28 USC § 1367.

54.     Venue is proper in this District pursuant to 28 USC § 1391 because the District is where the Defendant resides, where a substantial part of the events

and omissions giving rise to Plaintiffs' claims occurred, and where a substantial part of all properties subject to the action are located.

55.    As additional Class Plaintiffs are identified, this District will remain the most convenient venue in which all future cases can be considered and consolidated as necessary.

## V.    CAUSES OF ACTION

### COUNT ONE
### VIOLATION OF DUE PROCESS / UNCONSTITUTIONAL CONDITIONS DOCTRINE
### *(Forcing Plaintiff to Forfeit their Constitutional Rights in order to Sell or Rent Property)*

56.    Plaintiffs incorporate the preceding paragraphs.

57.    The Fifth and Fourteenth Amendments to the U.S. Constitution make it unconstitutional to deprive a person of their property without due process of law and just compensation.

58.    Plaintiffs have a protected property interest in selling or renting property for financial gain.

59.    Plaintiffs also have a right under the Fourth Amendment against unreasonable searches and seizures and the Amendment only permits searches based on probable cause and the issuance of a warrant.

60.    Plaintiffs have a reasonable expectation of privacy in their Property.

61.    As adopted by the City, the Pre-Sale Inspection and Rental Ordinance

12

(collectively the "Inspection Ordinances") authorize Code Officials unlimited, mandatory warrantless searches of real property in the City for the purpose of inspection. In that regard the Code provides for their right of inspection without setting forth any warrant procedures and/or providing for any pre-compliance review in violation of the Fourth Amendment and long-standing legal precedent (See *Camera v. Municipal Court* and *City of Los Angeles v Patel*).

62.    Where an inspection is not performed for any reason, the City does not secure a warrant, but instead coerces property managers or property owners into consenting to entry and a search under the threat of criminal charges, court action, fines, penalties, and/or refusal to issue certificates of occupancy.

63.    Under the Inspection Ordinances there is no ability for an owner to object to the building official's entry and inspection into the owner's property and there is no mechanism creating constitutionally required administrative search warrant standards in place for a building official to obtain an appropriate search warrant if an owner of property were to try to object to such entry.

64.    As a result, Plaintiffs, and every other owner of real property in the City, is deprived of their right against warrantless searches and otherwise must pay inspection fees, fines, and penalties in order to gain compliance or face the unconstitutional alternative of being deprived of their rights.

65.    In the event Plaintiffs or those others similarly situated, exercise their

right to be free from a warrantless search they are deprived of their right to lawfully sell property or rent property in the City or they are punished by the issuance of criminal charges for such refusal.

66.     The Supreme Court's "Unconstitutional Conditions" Doctrine arises from the Due Process guarantees articulated in the Fifth and Fourteenth Amendments to the United States Constitution.

67.     A state actor cannot constitutionally condition the receipt of a benefit, such as a sale or occupancy permit, liquor license, or an entertainment permit, on an agreement to refrain from exercising one's constitutional rights, particularly one's right to be free from unlimited warrantless searches of private property without probable cause.[3]

68.     The Supreme Court of the United States has confirmed in a variety of contexts that "government may not deny a benefit to a person because he exercises a constitutional right."[4]

69.     The Supreme Court has further explained that "[t]hose cases reflect an overarching principle, known as the unconstitutional conditions doctrine, that

---

[3]     *Perry v. Sindermann,* 408 U.S. 593, 597 (1972) ("For at least a quarter-century, this Court has made clear that even though a person has no 'right' to a valuable governmental benefit and even though the government may deny him the benefit for any number of reasons, there are some reasons upon which the government may not rely. It may not deny a benefit to a person on a basis that infringes his constitutionally protected interests . . .").

[4]     *Regan v. Taxation With Representation of Wash.,* 461 U.S. 540, 545 (1983). See also, e.g., *Rumsfeld v. Forum for Academic and Institutional Rights, Inc.,* 547 U.S. 47, 59–60 (2006); *Rutan v. Republican Party of Ill.,* 497 U.S. 62, 78, 110 S.Ct. 2729 (1990). In *Perry v. Sindermann,* 408 U.S. 593 (1972), for example, a public college would violate a professor's freedom of speech if it declined to renew his contract because he was an outspoken critic of the college's administration. And in *Memorial Hospital v. Maricopa County,* 415 U.S. 250 (1974), a county impermissibly burdened the right to travel by extending healthcare benefits only to those indigent sick who had been residents of the county for at least one year.

vindicates the Constitution's enumerated rights by preventing the government from coercing people into giving them up."[5]

70.    The Supreme Court has consistently applied the Unconstitutional Conditions Doctrine within the context of land use permitting.[6]

71.    Accordingly, the Inspection Ordinances adopted by the City are unconstitutional and unenforceable on their face and their application to Plaintiff and others has resulted in numerous violations of their rights.

72.    As set forth above the City conducted an unconstitutional registration and inspection scheme and has wrongfully collected potentially millions of dollars in ill-gotten registration and inspection fees.

73.    The City's conduct as described herein coerces Plaintiffs, and those similarly situated, to give up their constitutional right to be free from unreasonable searches and seizures.

74.    The City's conduct as described herein violates the Unconstitutional Conditions Doctrine and subjects the City to penalties for same, including but not limited to the reimbursement of registration and inspection fees unlawfully obtained.

## COUNT TWO

---

[5]    *Koontz v St. Johns River Water Management Dist.*, 133 S.Ct. 2586, at 2594 (2013).

[6]    *Id*. (explaining that "land-use permit applicants are especially vulnerable to the type of coercion that the unconstitutional conditions doctrine prohibits because the government often has broad discretion to deny a permit that is worth far more than property it would like to take."), citing *Lingle v. Chevron U.S.A. Inc*., 544 U.S. 528, 547, 125 S.Ct. 2074, 161 L.Ed.2d 876 (2005); *Dolan*, 512 U.S., at 385, 114 S.Ct. 2309 (invoking "the well-settled doctrine of 'unconstitutional conditions' ").

## VIOLATION OF FOURTH AMENDMENT
### *(Warrantless Searches)*

75.    Plaintiffs incorporate by reference the preceding paragraphs.

76.    The Fourth Amendment to the U.S. Constitution prevents the government from conducting unreasonable searches and provides that warrants, based on probable cause, are required before searching a house.

77.    The adoption of the Inspection Ordinances constitutes the City's express policy and practice of entering real properties without first satisfying the dictates of the Fourth Amendment and thus, on its face, the Inspection Ordinances are patently unconstitutional on their face and should be struck in their entirety.

78.    Alternatively, the City has a policy and practice of punishing Plaintiffs and those similarly situated who fail to permit an inspection of their real property for any reason by threatening court action against Plaintiff and those similarly situated instead of seeking a proper administrative search warrant. As applied, this practice violates the 4th Amendment of the U.S. Constitution.

79.    The City's policy and practice is that if an inspection is refused for any reason the owner of the property is punished for failure to permit the inspection.

80.    Under the guise of the City's unconstitutional inspection requirements the City has collected potentially millions of dollars in unlawful registration and inspection fees.

81.    Plaintiffs have had its right to be free from unreasonable searches and seizures violated and has been harmed as a result.

82.    Plaintiffs and those similarly situated are denied their constitutional right to the use and income generated from their real property if they fail to permit the City's warrantless searches and as such have been damaged.

## COUNT THREE
## UNJUST ENRICHMENT / REMEDY OF ASSUMPSIT

83. Plaintiff incorporates the preceding paragraphs.

84. The City's Inspection Ordinances mandate unconstitutional warrantless searches of Plaintiffs', and those similarly situated's, property.

85. The City has been charging and collecting inspection fees from Plaintiffs and those similarly situated under the illegal inspection scheme as set forth above.

86. The City has acquired and/or is in possession of funds that it is not entitled to retain.

87. Unjust enrichment exists when there is: (1) a benefit conferred by a plaintiff upon a defendant and (2) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment (i.e., the "unjust enrichment" elements).

88. Michigan Law expressly exempts claims of unjust enrichment from Michigan's Governmental Tort Liability Act. See *In Re Bradley Estate*, 494 Mich 367 (2013); *Genesee County Drain Commissioner v Genesee County*, 321 Mich

17

App 74 (2017).

89.The City has been unjustly enriched by collecting inspection fees from Plaintiffs and those similarly situated under their unconstitutional Inspection Ordinance scheme.

90.The City unconstitutionally extracted at least $200.00 from Plaintiff Abdullah under their unconstitutional Inspection Ordinances.

91.The City unconstitutionally extracted at least $250.00 from Plaintiff Abdullah under their unconstitutional Inspection Ordinances.

92.The City's extraction of money from Plaintiffs and those similarly situated was done to the detriment of the Plaintiffs and the putative class and to the benefit of the City.

93.It would otherwise be unjust to permit the City to retain funds obtained under an unconstitutional inspection scheme.

94.In *Baker v. Portsmouth*, 1:14-CV-512 (United States District Court for the Southern District of Ohio) and *Thompson v Oakwood*, 3:16-CV-169 (United States District Court for the Southern District of Ohio) the Courts concluded that claims for the refund of inspection fees associated with unconstitutional inspections requires that the fees be returned to those who have paid them.

95.Where a governmental entity has collected fees under an unconstitutional ordinance or statute equity requires that the government make restitution for the

unjustly obtained fees.

96. Plaintiffs, and all those similarly situated, are entitled to a refund of all unlawfully-coerced inspection fees paid to Defendant.

97. Michigan law provides that an assumpsit remedy may be maintained against a municipality and/or its divisions without regard to government immunity when restitution is being sought for an illegal or inappropriate assessment. While the cause of action for assumpsit has been abolished, the remedy of assumpsit remains.

## COUNT FOUR
## INJUNCTIVE RELIEF

98. Plaintiffs incorporate the preceding paragraphs.

99. The City continues to mandate warrantless searches under their Inspection Ordinances.

100.    The City continues to threaten Plaintiffs, and those similarly situated, with fines, fees, court action, and deprivation of certificates of compliance where these warrantless inspections are not granted for any reason.

101.    Unchecked, the City will continue to issue criminal tickets to property owners for failing to comply with the City's unlawful ordinances.

102.    Given these circumstances the losses to Plaintiffs and other owners of real property in the City are imminent and as such Plaintiffs request injunctive relief and an order stopping the City from its illegal and unconstitutional practices.

## COUNT FIVE

## DECLARATORY RELIEF

103.    Plaintiffs incorporate the preceding paragraphs.

104.    An actual controversy exists between Plaintiffs and the City of Dearborn regarding their administration of the Inspection Ordinances in violation of clearly established constitutional rights.

105.    Plaintiffs and others similarly situated are entitled to a declaration of their rights to be free from warrantless searches and seizures and ask that the Court determine that the City must comply with constitutional requirements.

## <u>COUNT SIX</u>
### VIOLATION OF 42 USC 1983

106.    Plaintiffs incorporate the preceding paragraphs.

107.    Plaintiffs and the class of those similarly situated have a constitutional right to challenge the City's unlawful Inspection Ordinances.

108.    As set forth above Defendant then proceeded to prosecute and collect fines and fees from Plaintiffs, and those similarly situated, in violation of their clearly established rights.

109.    The City has deprived homeowners of property and rights related thereto and is liable to the Plaintiffs and those similarly situated pursuant to 42 USC 1983.

110.    As set forth above Defendant has also deprived Plaintiffs and those similarly situated of their right to be free from unconstitutional searches and

seizures.

111.      Pursuant to 42 USC 1988, in any action or proceeding to enforce Section 1983 the Court, in its discretion, may allow the prevailing party a reasonable attorney fee as part of the costs.

## VII. CLASS ALLEGATIONS

112.      Plaintiffs incorporate the preceding paragraphs.

113.      All Plaintiffs and putative class members are subject to the City's unconstitutional Inspection Ordinances are forced to succumb to the City's will for warrantless searches under the threat of criminal penalties.

114.      <u>Class Definition.</u> Plaintiff seeks to certify the following classes

A) All persons and entities that paid any inspection fees or fines to the City of Dearborn at any time from January 23, 2013 through the date of final judgment under the City's pre-sale and rental Inspection Ordinances that requires property owners to forfeit their rights to be free from unreasonable searches and seizures; AND

B) All persons and entities that have been deprived of a certificate of compliance for refusing or otherwise failing to have their property inspected by the City of Dearborn at any time from January 23, 2013 through the date of final judgment under the City's Inspection Ordinances that requires property owners to forfeit their rights to be free from unreasonable searches and seizures.

115.      <u>Numerosity.</u> The proposed classes are so numerous that joinder of all members is impracticable. While the exact number of class members is not now known, Plaintiffs believe the class number is in excess of 1,000 members. These members may be readily identified from Defendant's own records.

21

116.   Commonality. There are questions of law or fact common to the members of the class that predominate over questions affecting only individual members.

117.   Among the questions of law or fact common to the class are the following:

a)   Does the City's Inspection Ordinances facially permit unconstitutional warrantless searches?

b)   Does the City's Inspection Ordinances, as applied, violate the 4th Amendment of the U.S. Constitution?

c)   Does the City's Inspection Ordinances violate the unconstitutional conditions doctrine?

118.   Typicality.   The harm suffered by Plaintiffs is typical of the harm suffered by other class members differing only in amount.   Accordingly, the claims of Plaintiffs are the same as those of the other class members. Resolution of these common questions will determine the liability of the Defendant to Plaintiffs and the class members in general.   Thus, the claims properly form the basis for class treatment in this case.

119.   Although the amount of damages between individual class members may vary, the underlying liability issues remain the same as between all members of the class and the Defendant.

120.    <u>Adequacy of Representation.</u>   The represented parties will fairly and adequately assert and protect the interest of the class.   Plaintiffs have already demonstrated its willingness to pursue this litigation on their own behalf, and have no known conflicts with the class members.

121.    Plaintiff's co-counsel will also fairly and adequately represent the interest of the class.  Attorney Mark K. Wasvary and Aaron D. Cox are well versed in the facts and substantive law underlying the Plaintiff's claims and have previously been certified to represent a class in multiple lawsuits involving inspection ordinances and other Constitutional issues.[7]

122.    This class action is maintainable under Federal Rule of Civil Procedure 23(b).

123.    The maintenance of this action as a class action will be superior to other available methods of adjudication in promoting the convenient administration

---

[7] Mark K. Wasvary has been certified as class counsel in the following lawsuits in the United States District Court for the Eastern District of Michigan: *Village Center Associates, et.al. v City of Detroit*, USDC Case No. 07-12963, *Lola Valley Terrace Association v Charter Township of Redford*, USDC Case No. 09-11238, *Lanson Development Company LLC v City of Dearborn*, USDC Case No. 09-13956, *Eghigian v Fifth Third Bank*, USDC Case No. 07-14406, *Garner, et.al. v City of Roseville, et.al*, USDC Case No. 16-10760, *Garner Properties & Management, LLC v Township of Redford*, USDC Case No. 16-14100, *Garner v City of Taylor*, USDC Case No. 16-cv-13374, *NILI 2011, et.al. v City of Warren*, USDC Case No. 15-13392. Mark K. Wasvary has also been certified in the Wayne County Circuit Court in the matter of *Woodside Square Limited Partnership v City of Romulus*, Case No. 09-019233-CZ and the Oakland Circuit Court in the matter of *Kelly, et.al. v Birmingham Public Schools,* Case No. 12-130333-CZ. Aaron D. Cox has been certified as class counsel in the following lawsuits: *Garner Properties & Management, LLC v Township of Redford*, USDC Case No. 15-14100, *Garner, et.al. v City of Roseville*, USDC Case No. 16-10760, *Garner v City of Taylor*, USDC Case No. 16-cv-13374 and *NILI 2011, et.al. v City of Warren*, USDC Case No. 15-13392.

of justice.

a)  The prosecution of separate actions by or against individual members of the class could create a risk of inconsistent or varying adjudications with respect to individual members of the class that would confront the party opposing the class with incompatible standards of conduct; and/or

b)  The prosecution of separate actions by or against individual members of the class would create a risk of adjudications with respect to individual members of the class that would as a practical matter be dispositive of the interests of other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

124.   The party opposing the class has acted or refuses to act on grounds that apply generally to the class, so that final equitable, injunctive or corresponding declaratory and monetary relief is appropriate respecting the class as a whole. Specifically, Defendant continues to enforce an ordinance that is unconstitutional on its face and as applied due to lack of a procedure to seek a warrant to search a real property.

125.   The questions of law or fact common to class members predominate over any questions affecting only individual members, and as such a class action is

superior to other available methods for fairly and efficiently adjudicating the controversy.

126.    The action is and will be manageable as a class action and in fact more manageable than the prosecution of separate actions in various forums and venues.

127.    In view of the complexity and importance of the constitutional issues and expense of the litigation, the separate claims of individual class members are insufficient in amount to support separate actions.

128.    It is probable that the amount which may be recovered for individual class members will be large enough in relation to the expense and effort of administering the action to justify a class action.

129.    Plaintiffs are not aware of any members of the proposed class that have filed similar litigation nor are Plaintiffs aware of any pending similar litigation in which the City is a Defendant.

130.    The class action is the appropriate method for the fair and efficient adjudication of the controversy.  The legal and factual bases for the Plaintiff' claims are the same as for the claims of all class members.  The only difference between individual claims is the severity of the harm and resulting damages. Adjudicating this case on a class wide basis will promote substantial judicial economy by eliminating the likelihood of multiple cases (perhaps thousands)

turning on the same questions of law and fact.  The class action will also provide the Plaintiffs with the only meaningful avenue for relief, due to the economy of spreading their litigation costs, thereby reducing each individual's expenses over the class and enabling counsel to pursue the litigation by aggregating the claims. Further, the class action will save the Defendant the burden of defending multiple suits in multiple forums.

## IX.    RELIEF REQUESTED

WHEREFORE, on behalf of themselves and others similarly situated, Plaintiffs request the following relief:

A.    That this action be determined as proper to be maintained as a class action pursuant to Federal Rules of Civil Procedure 23(b), together with an order appointing the named Plaintiffs to represent the class and subclass and certifying Plaintiff' counsel to represent the class and subclass;

B.    The injunctive and declaratory relief as applicable and specified in Counts Four and Five;

C.    An award of damages, including all applicable interest, in an amount to be determined at trial;

D.    An award of costs of this suit, including reasonable attorney's fees, as provided by 42 USC § 1988 or on other grounds;

E.    An award of an incentive fee to the named Plaintiffs for having the

courage to come forward and challenge the City and the manner in which it

administers its unconstitutional ordinances;

      F.     Punitive damages for the City's unconstitutional conduct; and/or

      G.     Any other relief as necessary to redress the violation of Plaintiff's

rights secured by the Constitution and laws.

                Respectfully submitted by:

                THE LAW OFFICES OF AARON D. COX, PLLC
                Co-Counsel for Plaintiff
                23380 Goddard Rd.
                Taylor, MI 48180
                734-287-3664

                /s/ Aaron D. Cox, Esq.
                By: Aaron D. Cox (P69346)
                aaron@aaroncoxlaw.com

                MARK K. WASVARY, P.C.
                Co-Counsel for Plaintiff
                2401 W. Big Beaver Rd., Suite 100
                Troy, MI 48084
                (248) 649-5667

                /s/ Mark K. Wasvary
                By: Mark K. Wasvary (P51575)
                mark@wasvarylaw.com

Dated: March 12, 2019